## GRANT LE ROY v. THE STATE.

### No. 2486. Decided March 19, 1902.

**1.—Postponement—Continuance—Practice.**

A court is not authorized to refuse a postponement or continuance properly and legally applied for upon promise to the defendant that, if the verdict should go against him, he could procure and the court would consider the absent testimony on a motion for new trial. This was taking away from the jury defendant's right to have that body pass upon the facts in determining defendant's responsibility under the charge against him.

**2.—Same—Right of Trial by Jury.**

Under the state of case above indicated, the statute, with regard to defendant's right of trial by jury, would be nullified; and under such practice the jury would try the case on the facts presented by the State, and on motion for new trial the court would try defendant's side of the case, whereas a party accused of crime is guaranteed the right to have the facts of his case and his side of the case passed upon by the jury exclusively.

Appeal from the Criminal District Court of Dallas. Tried below before Hon. Chas. F. Clint.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The case is sufficiently stated in the opinion.

*Whitehurst & Whitehurst,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of robbery and his punishment assessed at confinement in the penitentiary for a term of five years.

When the case was called for trial a postponement or continuance was asked for the following reasons, as stated in the bill of exceptions: "Defendant's counsel were appointed by the court and had not had the opportunity to see defendant, as he was on the county farm, and was not brought up until the day of trial, and counsel would like to have time to find out from defendant the names of the witnesses and what they would testify in court. Whereupon the court refused to grand a postponement or continuance, and did not give defendant time to prepare a written motion for postponement or continuance, stating that if defendant would procure the testimony after the trial was over, if verdict should be against defendant, he would consider the same on motion for new trial." Attached to the motion for new trial in this connection were the affidavits of Jim Coleman, Henry Whitaker, and Arthur Clemmons. The substance of their testimony was that they were present at the room over Smith's saloon, and knew of the trouble which occurred, wherein it is charged that appellant robbed Bud Lewis; that a negro by the name of Scogy and Bud Lewis were playing at five-up. Bud Lewis had a dollar, out of which Scogy had won 75 cents. Lewis refused to give up the 75 cents, and drew his knife. All this occurred upstairs in the gambling room. When the parties went downstairs, appellant went with them, but had no interest in the quarrel. Scogy and Lewis got into a fight, and Lewis was trying to use his knife on Scogy. Appellant was trying to separate them, and perhaps got hold of both of them during the fight at different times; that after the fight Lewis came through the saloon, muddy, and said, "We had a fight, but he did not get any of the money." Affiant Coleman saw all the trouble upstairs and on the street, and heard what was said in the saloon. Whitaker and Clemmons saw and heard what passed upstairs and in the saloon, but did not see the street fight. And affiants state the above facts are true, and also state that, in their opinion, John Haley, Jim Jenkins, and Lon Reed saw and know about the facts; and many others were present.

It is said that process was issued, and it is further shown that Jim Jenkins was, by order of the court, brought in, and testified orally, substantially as set forth in the three affidavits. The court enters into a lengthy explanation by detailing the testimony of these witnesses, the substance of which is that Arthur Coleman says there was gaming upstairs between 8 and 9 o'clock; that he found defendant, Scogy, and Lewis present. Directly they went downstairs; that was before 10

o'clock; did not follow them and no one else went downstairs, so far as he saw, except Scogy, Lewis, and defendant. Jim Coleman testified that he was at the gambling house about 7 o'clock; found Scogy, Lewis, and defendant upstairs. Scogy and Lewis were playing monte. Scogy won 75 cents from Lewis, who had no change less than a dollar. Lewis quit and said he would downstairs and get the change. Lewis opened his knife going downstairs. Defendant and Scogy went down with Lewis; they went down the front way and went into the front door of the restaurant, which was next door, and back through the restaurant. Witness heard a fuss back there, and then saw Lewis with a knife. He went down with them. Henry Whitaker testified that he was up in the gambling house, and saw Lewis and Scogy gambling at five-up; that they had a row; that Lewis pulled a knife and started downstairs, and Scogy and defendant followed. There were about 100 negroes upstairs; that when Lewis went down the whole house followed. That all this occurred early. in the night, before 10 o'clock. The court further adds that these witnesses testified to facts which showed them to be shiftless, vagrant negroes; had been convicted at different times, and two of them had served terms on the poorfarm. He further explains that defendant, as shown by the statement of facts, stated the trouble occurred about 2 or 2:30 o'clock in the morning. The injured party and the restaurant man show that it was between 8 and 9 o'clock when Lewis bought the fish and went into the alley and was robbed. The evidence further shows that Scogy fled the country that night and defendant was caught. This is the explanation of the court to the bill of exceptions. The evidence for the State, as found in the statement of facts, varies as to time from about 8 to 10 o'clock at night when the difficulty occurred; and excludes absolutely the idea that the injured party was gambling upstairs. Time should have been granted appellant to have prepared his continuance. But, if this was not error on the part of the court, then it must be viewed from the standpoint of the motion for new trial; and from this angle of view, we are of opinion that another trial should have been awarded. It is beyond dispute, as manifested by the bill of exceptions, that appellant was brought from the poorfarm and forced into trial without time for preparation. Counsel who had been appointed by the court requested time in which to investigate the case and prepare for the defense. The trouble with the court's statement that if defendant would secure the testimony after the trial was over, in case he should be convicted, he would consider it on motion for new trial, is that it took away from the jury the right to have that body pass upon the facts in order to test his responsibility under the charge. If the newly discovered testimony be true, or be credited by the jury, Scogy and Lewis engaged in the fight over a gambling transaction, and appellant simply interfered between them; and if Lewis' statement, as detailed by them, is true or credited by the jury, that they did not get the money they had won from him—the question of robbery would pass out of the case. Our law provides for a trial by jury on the facts, and does not justify the court in refusing

to permit defendant to have testimony; and then determine the matter on motion for new trial, as to whether he would believe the witnesses or not. This would seem to nullify our statute in regard to a jury trial. At least, under this practice the jury would try the State's case on the facts; and the court, on motion for new trial, would try the defendant's side of the case. The party accused of crime is guaranteed the right to have his case and his side of the case passed on by the jury; and where he has testimony that is material and pertinent, the credibility of the witnesses, the weight to be given the testimony, and the facts proved, are exclusively relegated to the jury. Here we have the peculiar condition of things that the jury has heard the State's case and convicted the defendant; and subsequently, on motion for new trial, the court has heard the defendant's case and refused a new trial. The judgment is reversed and the cause remanded.

*Reversed and remanded.*